**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**SUE IRMEN,**

Plaintiff,

v.

**BENCHMARK RESTAURANT GROUP, LLC, et al.,**

Defendants.

CASE NO. 3:25 CV 1275

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

On August 21, 2025, Plaintiff Sue Irmen filed an Amended Complaint in this case alleging the Defendants violated numerous provisions of federal statutory law and her rights under state law. *See generally* Doc. 15. Presently pending before the Court is a Motion to Dismiss brought by Defendants Edward C. Harmon ("Harmon"), Spartan Logistics, Ltd. ("Spartan"), and Industrial Developers, Ltd. ("Developers").[1] (Doc. 16). Plaintiff opposed (Doc. 20), and Defendants replied, (Doc. 23). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 & 1367. For the following reasons, the Court grants in part and denies in part Defendants' Motion.

## BACKGROUND

Around September 2022, Irmen began working as a server at Claude's, a restaurant owned by Defendant Benchmark, who is not a party to the present Motion. *See* Doc. 15, at 3; Doc. 16, at 1. "[Plaintiff] accepted the position because it promised full-time hours as well as health insurance

1. Throughout this Opinion, the Court refers to Harmon, Spartan, and Developers collectively as "Defendants" despite co-Defendant Benchmark Restaurant Group, LLC ("Benchmark") not joining the present Motion.

benefits." (Doc. 15, at 3). Such benefits would be provided under the "Spartan Warehouse and Distribution Company Incorp Group Health Plan," (the "Plan"), for which Developers was the "named Plan Sponsor/Plan Administrator." *Id.* at 2–3. Prior to Fall 2023, Plaintiff was notified she needed to average 30 hours worked per week to maintain her health insurance coverage. *Id.* at 4. Plaintiff never received a plan document, summary, or other written instrument evidencing this 30-hour requirement. *Id.* Nevertheless, because maintaining coverage "was of vital importance" to Plaintiff, she consistently sought to work at least 30 hours per week. *Id.* at 4–6.

During Fall 2023, servers at Claude's were collectively notified they would lose their health coverage because they had failed to work the requisite 30 hours per week. *Id.* Plaintiff went to Jon Mickle, then the General Manager at Claude's, to explain she consistently worked 30 hours per week and that her benefits should not be cancelled. *Id.* Mickle agreed after reviewing her records. *Id.* In December 2023, Harmon himself, after becoming sole owner of Defendant Benchmark, told Plaintiff directly the company would not take away her benefits. *Id.* at 5. Following a change in management, Plaintiff's scheduled hours declined and Plaintiff noticed both management employees and coworkers "more frequently made discriminatory comments regarding the ages of certain customers." *Id.* Plaintiff, 63 years old when she filed the Amended Complaint, "was significantly older than the other servers at Claude's." *Id.* at 3, 5.

On April 8, 2024, management notified Plaintiff she failed to meet the 30-hour threshold for receiving benefits and, as a result, would be classified as a part-time employee. *Id.* at 5. Plaintiff responded by indicating she wished to discuss the change with Harmon present. *Id.* at 6. No such meeting occurred. *Id.* Later, another manager told Plaintiff they needed to discuss her benefits. *Id.* During such discussion, Plaintiff relayed what Harmon stated regarding not taking away Plaintiff's benefits. *Id.* The manager replied, "Well, he's the big guy. If he said that, then okay." *Id.* Plaintiff

never received documentation terminating her health insurance benefits or a "COBRA Continuation Coverage Election Notice." *Id.*

On October 27, 2024, Plaintiff injured her back outside of work. *Id.* As a result of the injury, Plaintiff could not work from October 28 to November 17, 2024. *Id.* at 7. During this period Plaintiff received medical treatment for her injury including an initial trip to the emergency room, an appointment with a primary care physician, and physical therapy. *Id.* at 6–7. Further, on October 31, 2024, Plaintiff spoke with a representative of her insurance provider to get help finding an in-network physician. *Id.* at 7. This representative provided such assistance and never indicated to Plaintiff she no longer had insurance coverage. *Id.* Plaintiff met with a physician shortly thereafter, and the physician accepted Plaintiff's insurance. *Id.* However, on December 3, 2024, Plaintiff's physical therapy provider told her she did not have valid insurance coverage after Plaintiff appeared for a scheduled appointment. *Id.* Plaintiff called Spartan and spoke with one Cindy Stafford who told Plaintiff she "no longer had health insurance as of April 2024." *Id.* Plaintiff then called her insurance provider, and a representative indicated Plaintiff's employer provided notice of Plaintiff's ineligibility for coverage on November 22, 2024. *Id.* at 7-8. Despite not providing the provider with notice until November, Plaintiff's employer additionally told the provider her health benefits should have ended in April 2024. *Id.* at 8.

On January 6, 2025, Plaintiff had a meeting with Claude's management. *Id.* at 9. There, she received a document stating her employment status was changed to part-time effective April 8, 2024, and was ultimately terminated from the company. *Id.* Through legal counsel, Plaintiff sent a letter to Harmon requesting a copy of the Plan Document and Summary Plan Description for the Plan. *Id.*; Doc. 16-1. Counsel for Benchmark responded to Plaintiff's letter, but did not provide the requested documentation. *Id.*; Doc. 20-1.

This lawsuit followed. Plaintiff brings claims for relief under federal age and disability discrimination law, Ohio law analogues of the same, various provisions of the Employee Retirement Income Security Act ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Ohio Smokefree Workplace Act, and Ohio's law of wrongful discharge and promissory estoppel. *See* Doc. 15, at 10–20.

## STANDARD OF REVIEW

A motion to dismiss made pursuant to Federal Civil Rule 12(b)(6) charges the Court with assessing the legal sufficiency of a plaintiff's complaint. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In so doing, the Court must answer only whether the plaintiff's factual allegations, accepted as true, state a legally viable claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unsupported legal conclusions, however, are not taken as true, and sufficiently stating a claim for relief therefore requires more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

### ERISA Claims

Defendants' Motion to Dismiss first targets Counts 3, 4, and 5 of the Amended Complaint—Plaintiff's ERISA claims.

Count 3 alleges Defendants breached fiduciary duties owed Plaintiff in connection with the administration of her benefits under the Plan such that she is entitled to obtain "appropriate equitable relief." *See* Doc. 15, at 12–13 (quoting 29 U.S.C. § 1132(a)(3)(B)). Specifically, Plaintiff alleges Defendants breach their fiduciary duties by misrepresenting and failing to represent

material facts "regarding the status of her health insurance coverage by telling her she would continue to be covered under the Plan" and by failing to produce Plan documents. *Id.* at 13.

Count 4 claims Plaintiff's termination from her position as a server constitutes unlawful retaliation for her receipt of benefits under the Plan, her questioning of her eligibility for such benefits under the Plan, or some combination thereof. *See* Doc. 15, at 13–14; 29 U.S.C. § 1140.

Count 5 alleges Defendants failed to provide Plaintiff with the Plan documents she requested through her January 22, 2025 letter in violation of 29 U.S.C. § 1024(b)(4). *See* Doc. 15, at 14–15; *see also* 29 U.S.C. § 1132(c)(1) (establishing a plan administrator shall be personally liable to a beneficiary for certain failures to provide plan information).

*Count 3: Breach of Fiduciary Duty*

Defendants offer two distinct bases for dismissal of Count 3. First, they argue Plaintiff fails to plausibly allege Defendants are fiduciaries on which ERISA imposes certain equitable duties. *See* Doc. 16, at 5–6; *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006). The plaintiff may demonstrate and, at this stage of the proceedings, allege, the defendant acted as an ERISA fiduciary if "it exercise[d] either (1) any authority or control over plan assets; or (2) discretionary authority over plan management or administration." *Tiara Yachts, Inc. v. Blue Cross Blue Shield of Mich.*, 138 F.4th 457, 463 (6th Cir. 2025) (quoting 29 U.S.C. § 1002(21)(A)). Fiduciary status is determined not in the abstract, but specifically with respect to the action of which Plaintiff complains. *Id.* (explaining courts must "take a functional approach to ERISA fiduciary analysis" and determine whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint") (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).

The Court agrees Plaintiff fails to allege facts sufficient to imbue Spartan with fiduciary duties under ERISA. Initially, Plaintiff's naked assertion that all Defendants "are fiduciaries, as defined by 29 U.S.C. § 1104(a)," (Doc. 15, at 12), is not assumed to be true as it is "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. Outside of this standalone legal conclusion, Plaintiff's Amended Complaint offers just two facts relevant to Spartan's fiduciary status. First, Plaintiff alleges Spartan "handles human resources[,] including benefits administration[,] for Defendant Benchmark." (Doc. 15, at 2). Second, Plaintiff describes how she contacted Cindy Stafford at Spartan to inquire as to the status of her health insurance following the denial of coverage at her December 2024 physical therapy appointment. *Id.* at 7. Neither of these facts lay a sufficient foundation from which the Court could "draw the reasonable inference" that Spartan is a fiduciary within the meaning of ERISA. *Iqbal*, 556 U.S. at 678. Primarily, this is because neither fact suggests, much less establishes, that Spartan exercises some discretionary authority over the Plan, Plaintiff's benefits under the Plan, or her continued participation in the Plan. Nowhere does Plaintiff adequately allege Spartan exercised "a degree of control" over the benefits under the Plan or her continued participation in it. *Wallace v. Int'l Paper Co.*, 509 F. Supp. 3d 1045, 1052 (W.D. Tenn. 2020). Rather, Plaintiff's Amended Complaint plausibly alleges only that Spartan's role in "benefits administration" involved performing ministerial functions such as notifying Plaintiff her health coverage under the Plan had been terminated. *See* Doc. 15, at 7.

With respect to Developers, however, Plaintiff alleges facts plausibly establishing its status as a fiduciary. Under ERISA, "any administrator" of the Plan is a fiduciary of the Plan. 29 U.S.C. § 1002(14)(A). An "administrator" is either "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) [if neither (i) or (ii) apply] such other person as the Secretary may be

regulation prescribe." *Id.* § 1002(16)(A). Here, Plaintiff alleged "upon information and belief" that Developers serves as the "named Plan Sponsor/Plan Administrator" for the Plan. (Doc. 15, at 2). Pleading on information and belief may be proper where, as here, the facts at issue "are peculiarly within the possession and control of the defendant." *Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 224 (S.D. Ohio 2019) (quoting *Gerling & Assocs. v. Odulair, LLC*, 2017 WL 2790669, at *6 (S.D. Ohio)). Plaintiff alleges she was denied access to the relevant Plan documents and summaries by Defendants, rendering such information within their possession and control to the exclusion of Plaintiff. *See* Doc. 15, at 9–10, 14–15. Accordingly, it is sufficient at this stage in the proceedings to allege, "upon information and belief," that Developers is the named administrator of the Plan. Assuming such allegation is true, as the Court must when resolving a motion to dismiss, Developers is thus a fiduciary pursuant to § 1002(14)(A), and acted as such in deciding not to act in a manner consistent with Harmon's promise to continue Plaintiff's benefits coverage. *See Parks v. Fin. Fed. Sav. Bank*, 345 F. Supp. 2d 889, 896 (W.D. Tenn. 2004) ("As the plan administrator, the Defendant necessarily exercised a degree of discretion over the administration of the plan" such that the Defendant "was a fiduciary within the meaning of ERISA").

Defendant Harmon presents the closest call on this question. Again, a defendant may be deemed a fiduciary where the plaintiff demonstrates they retained some "discretionary authority" over plan management and administration. Plaintiff points to two passages of the Amended Complaint to support Harmon's fiduciary status. *See* Doc. 20, at 6. First, Plaintiff alleged Harmon, at a meeting to announce his sole ownership of Benchmark, told her no one would be taking away her benefits under the Plan. *See* Doc. 15, at 4–5. Next, Plaintiff alleged a manager at Claude's, Anna Crumrine, heeded Harmon's statement. When Plaintiff presented Crumrine with Harmon's

words, Crumrine assured Plaintiff that Harmon was "the big guy" and that "[i]f he said" Plaintiff could keep her benefits, she could. *See id.* at 6. Taken in combination, the Court finds these allegations, taken as true, sufficient to plausibly establish Harmon's status as a fiduciary under ERISA. A permissible inference arises from Harmon's sole ownership of Benchmark, the entity employing Plaintiff, his reassurances to Plaintiff, and the extent to which a Benchmark employee heeded such reassurances, that Harmon played some "discretionary" role in providing benefits-related information to employees and determining who did and did not remain covered under the Plan. Plaintiff's allegations giving rise to that inference are sufficient to survive Defendants' Motion, particularly where fiduciary status is a fact-bound inquiry and "[i]t is typically premature to determine a defendant's fiduciary status at a motion to dismiss stage of the proceedings." *Wallace*, 509 F. Supp. 3d at 1052 (quoting *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004)). Accordingly, the Court will dismiss Count 3 only with respect to Defendant Spartan on account of Plaintiff's failure to plead facts plausibly alleging Spartan's fiduciary status.

Next, Defendants contend Count 3 requires dismissal as to all Defendants because Plaintiff is precluded from obtaining relief under § 1132(a)(3). *See* Doc. 16, at 6. Section § 1132 is ERISA's remedial provision and, as is relevant here, outlines three distinct circumstances in which a beneficiary such as Plaintiff may obtain relief. First, a beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Next, beneficiaries may bring suit to recover money in the event a plan administrator fails to furnish to the beneficiary certain plan documents. *Id.* § 1132(c)(1). Finally, § 1132(a)(3) serves as ERISA's remedial "safety net" which offers "appropriate equitable relief for injuries caused by

violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). In this sense, demonstrating the inadequacy of other provisions of § 1132 is a necessary precondition to obtaining "appropriate equitable relief" pursuant to § 1132(a)(3). *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 373–74 (6th Cir. 2015) (en banc) ("[T]he availability of relief under [§ 1132(a)(3)] is contingent on a showing that the claimant could not avail himself or herself of an adequate remedy pursuant to [§ 1132(a)(1)(B)]."). "[C]laims arising under section (a)(3) are properly pled 'only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under [section (a)(1)(B)] is otherwise shown to be inadequate.'" *Neack v. UC Health, LLC*, 2024 WL 6999265, at *2 (S.D. Ohio) (quoting *Rochow*, 780 F.3d at 372).

Defendants contend the Amended Complaint "in essence, relates to Plaintiff's denial of benefits." (Doc. 16, at 6). On Defendants' account then, Plaintiff "has the 'ability to bring suit for payments of benefits under 29 U.S.C. § 1132(a)(1).'" (Doc. 16, at 6) (quoting *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428 (6th Cir. 2006)); *accord* Doc. 23, at 3 ("If Plaintiff believes that her coverage was wrongfully terminated, then her proper remedy would be under § 1132(a)(1) challenging the termination decision, not a breach of fiduciary duty claim."). The Court is not persuaded by this argument. The theory of liability outlined in Plaintiff's Amended Complaint is not contingent on challenging the validity of the April 2024 coverage termination decision. Plaintiff does not directly contend the decision to terminate her medical coverage violated the terms of the Plan or otherwise constituted a denial of "benefits due" to her under the terms of the Plan. Rather, Plaintiff contends Defendants violated their fiduciary duties by misrepresenting the status of Plaintiff's health coverage, specifically by claiming her benefits would not be taken away, and by failing to provide her with documentation related to the termination of her coverage. *See*

Doc. 15, at 13. Such a theory is sufficient to support a claim for equitable relief under § 1132(a)(3), as it does not bear on the propriety of a denial of benefits. *See Bailey v. United Omaha Life Ins. Co.*, 2023 WL 2599979, at *3 (S.D. Ohio) (finding the plaintiff alleged a "separate and distinct injury" from the denial of benefits where the injury arose "because he was not provided notice of cancel[l]ation or given the opportunity to extend or seek out" other insurance, which in turn caused the plaintiff's insurance coverage to "lapse").

Accordingly, the Court dismisses Count 3 only with respect to Defendant Spartan. Plaintiff's factual allegations are sufficient to state a plausible claim for breach of fiduciary duty as to Defendants Harmon and Developers.

*Count 4: Retaliation*

To state a plausible ERISA retaliation claim under § 1140, the plaintiff must first allege: "(1) she was engaged in activity ERISA protects; (2) she suffered an adverse employment action; and (3) a causal link exists between her protected activity and the employer's adverse action." *Hamilton v. Starcom Mediavest Grp.*, 522 F.3d 623, 628 (6th Cir. 2008).[2] In effect, Defendants challenge the second of these elements, arguing Plaintiff failed to allege they operated as her employer or otherwise had "the ability to take any prohibited employer action." (Doc. 16, at 7). Initially, the Court agrees with Plaintiff that § 1140's use of "person" rather than "employer" expands potential retaliation liability beyond the traditional, common law of agency employer-employee relationship. *See* Doc. 20, at 9–10; *Mattei v. Mattei*, 126 F.3d 794, 801–04 (6th Cir.

---

2. These elements constitute a "prima facie case" under the *Burdine* burden-shifting framework for cases in which the plaintiff does not put forth, or where, as here, the plaintiff does not allege, facts bearing directly on the defendant's motivation for taking the adverse action. *Hamilton*, 522 F.3d at 628; *see generally Texas Dep't of Comty. Affs. v. Burdine*, 450 U.S. 248 (1981).

1997). Nevertheless, the Court agrees with Defendants that Plaintiff fails to plausibly allege they retained authority to and did in fact take a prohibited action.

Again, Plaintiff does not directly challenge the propriety of the decision to terminate her benefits under the Plan. As it pertains to her retaliation claim, the only relevant adverse action is the termination of her employment as a server at Claude's. *See* Doc. 15, at 14 ("Defendants' decision to terminate Irmen was motivated by Irmen's exercise of rights under Defendants' health insurance plan . . . constitute[ing] a violation of ERISA § 510 (29 U.S.C. § 1140)."). The operative question is thus whether, even operating under ERISA's use of "person" rather than "employer," Plaintiff alleged facts sufficient to demonstrate Defendants were the "persons" who could and did engage in the adverse action underlying her retaliation claim. The Court finds she did not.

Start with Harmon. Plaintiff generally alleges Harmon "holds an ownership interest in" Spartan, Developers, and Benchmark, and even became the "sole owner of Benchmark" in December 2023. (Doc. 15, at 2, 4). However, nowhere does Plaintiff allege Harmon had the individual authority to make hiring and firing decisions or otherwise participated in the decision to terminate her employment with Benchmark. The same is true for Spartan. While Plaintiff describes Spartan as responsible for "human resources including benefits administration" for Benchmark, *id.* at 2, she does not allege Spartan or its agents could or did participate in her firing. Finally, Plaintiff's allegations with respect to Developers are similarly deficient, as Plaintiff's Amended Complaint contains no factual allegations suggesting Developers retained the authority to take any adverse action against Plaintiff outside its role as "the named Plan Sponsor/Plan Administrator" of Plaintiff's benefits Plan. *Id.* at 2. Fundamentally, Plaintiff's complaint fails to draw the requisite connection between these Defendants and the retaliatory action of which she complains. That failure is fatal. *See Roy v. Kimble Chase Life Sci. & Rsch. Prods., LLC*, 2013

245201, at *3 (E.D. Tenn.) (explaining dismissal was warranted where a plaintiff alleged only that "the individual defendants were 'employers' within the meaning of the statute and did not allege any specific action on the part of the individual defendants that would constitute a violation of the statute").

The Court grants Defendants' Motion with respect to Count 4 of Plaintiff's Amended Complaint.

*Count 5: Failure to Provide Plan Documents*

Next, Defendants seek dismissal of Plaintiff's claim rooted in their alleged failure provide documents claim under 29 U.S.C. § 1024(b)(4). Section 1024 requires "the administrator" of a plan to "furnish a copy of the latest updated summary, plan description . . . trust agreement, contract, or other instruments under which the plan is established or operated" whenever any participant in or beneficiary of the plan submits a written request to the administrator. *Id.* In turn, § 1132(c) provides a cause of action for those beneficiaries and participants who do not receive the requested plan documents form the administrator. 29 U.S.C. § 1132(c)(1) ("Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish . . . may, in the court's discretion, be personally liable to such participant or beneficiary.").

Defendants first argue Harmon cannot be held liable under § 1132(c) because he is not an administrator of the Plan. *See* Doc. 16, at 7–8. "The law in this Circuit is clear that '[o]nly a plan administrator can be held liable under section 1132(c).'" *Hiney Printing Co. v. Branter*, 243 F.3d 956, 961 (6th Cir. 2001) (quoting *VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (9th Cir. 1992)). Under ERISA, a plan administrator is "the person specifically so designated by the terms of the instrument under which the plan is operated" or, "if an administrator is not so

designated, the plan sponsor." 29 U.S.C. § 1002(16)(A). Here, Plaintiff unequivocally identified Developers as the "named Plan Sponsor/Plan Administrator" of the Plan. (Doc. 15, at 2). Accepting Plaintiff's allegations as true which, at this stage, the Court must, the Plan's sole administrator is Developers, meaning only they may clearly be held liable for the failure to provide plan documents to Plaintiff. *Hiney*, 243 F.3d at 961; *see Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584–85 (6th Cir. 2002) (explaining ERISA's "default provision" permitting employers to be deemed the plan sponsor applies only where the identity of the plan administrator is not "otherwise specified in the plan"). Thus, the Court grants Defendants' Motion to Dismiss with respect to Defendant Harmon, as Plaintiff fails to allege facts sufficient to demonstrate his identity as the Plan's administrator or sponsor under § 1002(16)(A).

Having identified Developers and Spartan as the only proper parties against which this claim may be brought,[3] the Court must determine whether Plaintiff plausibly alleged she provided either party with "clear notice" of her request for Plan documents. *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 707 (6th Cir. 2014) ("[T]he key question under the clear-notice standard is whether the plan administrator knew or should have known which documents were being requested."). Plaintiff's request letter, sent January 22, 2025, is expressly addressed to Defendant "Benchmark Restaurant Group, LLC," to the attention of Defendant Harmon. (Doc. 16-1, at 1).[4] Unfortunately for Plaintiff, the letter does not name Spartan or Developers, and failed to even

---

3. While the Court's analysis suggests Developers is the only proper party against which Plaintiff may pursue her § 1132(c) claim, Defendants moved to dismiss on this ground only with respect to Harmon. *See* Doc. 15, at 7–8.

4. Plaintiff did not attach a copy of the request letter to her Amended Complaint. However, the Court finds it proper to consider the contents of the letter, which Defendants attached to their Motion to Dismiss, because it is "referred to in [Plaintiff's] complaint and [is] central to her claim" under § 1132(c). *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

indirectly refer to the Plan's administrator or sponsor. *Id.* at 1–4. Thus, while Plaintiff's letter unequivocally requests Plan documents, *see id.* at 3 ("[Plaintiff] requests a copy of the Plan Document and Summary Plan Description for the Medical, Dental, Vision, and Accident Plans under which [Plaintiff] previously had coverage."), there are no factual allegations suggesting Spartan or Developers received or should have received this request.

While it is possible for a plan administrator to be "so closely related" to another entity such that a request to the related entity "should [be] construed as one to" the administrator itself, Plaintiff has not alleged facts sufficient to demonstrate such a relationship between Developers and Benchmark or Spartan and Benchmark. *Minadeo v. ICI Paints*, 398 F.3d 751, 759 (6th Cir. 2005); *see also Flatt v. Aetna Life Ins. Co.*, 2014 WL 6673910, at *6 (W.D. Tenn.) (recognizing the "*de facto* administrator" doctrine). According to Plaintiff, Spartan, Developers, and Benchmark "which are all owned by [Harmon] (to whom the letter was directed), are so intertwined that there is no real difference between them." (Doc. 20, at 12). But Plaintiff does not point to any factual allegations in the Amended Complaint supporting this line of argument. *See id.* Rather, Plaintiff points to Benchmark's response to her request letter, stating it "does not provide any indication the request should have been sent to [Spartan, Developers,] or anyone else" and provides evidence the aforementioned Cindy Stafford functioned as the human resources Director for both Spartan and Benchmark. *Id.* Even if the Court could consider the substance of Benchmark's response letter,[5] it is not sufficient to establish Benchmark, Spartan, and Developers are so closely intertwined that a letter to Benchmark would put the latter two entities on "clear notice" of

5. The letter does not "merely 'fill in the contours and details'" of Plaintiff's Complaint, as it instead serves as the basis for a new line of argument first introduced in Plaintiff's opposition brief regarding Benchmark, Spartan, and Developers' status as effectively a singular entity. *Armengau v. Cline*, 7 F. App'x 336, 346 (6th Cir. 2001) (quoting *Yeary v. Goodwill Indus.*, 107 F.3d 443, 445 (6th Cir. 1997)); *see* Doc. 20, at 12.

Plaintiff's request for documents. The mere fact that Harmon retained an ownership interest in each entity does not establish their common identity or that Benchmark somehow "participated in the administration of benefits" such that it may be deemed a *de facto* administrator along with Spartan and Developers. *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 844 (6th Cir. 2007).

Thus, the Court finds Defendants entitled to dismissal of Count 5 of Plaintiff's Amended Complaint.

<u>COBRA Claim</u>

Similar to Plaintiff's claim under 29 U.S.C. § 1140, Count 6 alleges Defendants failed to provide a "notice of her right to elect COBRA continuation coverage" in violation of 29 U.S.C. § 1166(a). Defendants move to dismiss this Count only as applied to Harmon, arguing he cannot be held individually liable for any failure to notify Plaintiff of her rights as that duty falls only on Plaintiff's employer and plan administrator. *See* Doc. 16, at 9. Plaintiff opposes, arguing her Complaint "clearly pled that Defendant [Harmon] is an administrator of the health plan" such that "the record needs to be developed to determine whether [Harmon] or some other person or entity is the plan administrator for the Health Plan." (Doc. 20, at 14–15).

But the sole allegation purportedly establishing Harmon's status as an administrator of the Plan is an archetypical legal conclusion to which the assumption of truth does not attach. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); Doc. 15, at 15 ("Defendants were and are administrators of the healthcare plan, and must provide COBRA continuation coverage as a result of a qualifying event."). The Court is particularly disinclined to credit this bare legal conclusion where Plaintiff's factual allegations run directly contradictory to it. As explained previously, Plaintiff specifically alleged Developers, not Harmon, to be the named Plan administrator. *See*

Doc. 15, at 2. And a participant's employer or other entity may not be deemed the plan administrator where the plan itself names another as administrator. *See* 29 U.S.C. § 1002(16)(A). In fact, Plaintiff's direct factual allegation regarding Developers' status as the Plan's named administrator runs contrary to her invocation of *McDowell v. Krawchison*, as there, the allegations (and evidence) supported a finding the individual owner "was the plan sponsor" who would be deemed the plan administrator "in the absence of a designated administrator." 125 F.3d 954, 962 (6th Cir. 1997). In effect, the absence of a named administrator is a necessary precondition to finding an individual such as Harmon could be the plan's sponsor based on his role as "the sole owner and officer" of the relevant entities. *Id.* at 963. Thus, Plaintiff's decision to specifically allege Developers served as the named Plan administrator precludes this Court from finding she plausibly alleged Harmon also served as the Plan administrator.

The Court therefore grants Defendants' Motion to Dismiss Count 6 with respect to Defendant Harmon.

Promissory Estoppel

Finally, Count 9 of Plaintiff's Complaint asserts promissory estoppel claim under Ohio law based on Defendants' promise to continue providing health benefits "throughout her employment," Plaintiff's continued reliance on the same, and Defendants' decision to terminate her health benefits under the Plan. *See* Doc. 15, at 18–19. Defendants move to dismiss this claim on two separate grounds. First, in a single paragraph, Defendants argue "Count 9 falls within the scope of ERISA preemption" and must therefore be dismissed. (Doc. 16, at 9–10). Second, Defendants contend Count 9 fails on the merits due to Plaintiff's failure to allege the existence of an ambiguity in the Plan documents—a necessary precondition for establishing a promissory estoppel claim when a written instrument covers the subject matter of the dispute. *Id.* at 10 (citing *Sprague v. Gen.*

*Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) ("Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions.")).

*Preemption*

There are two main ways in which Congress, through ERISA, preempted certain state law causes of action: "complete preemption under 29 U.S.C. § 1132(a)(1)(B) and express preemption under 29 U.S.C. § 1144." *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (quoting *Loffredo v. Daimler AG*, 500 F. App'x 491, 500 (6th Cir. 2012)). Starting with complete preemption, § 1132(a)(1)(B) states in its entirety:

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). This provision operates as "part of a civil enforcement scheme whose comprehensive and carefully integrated character provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to expressly incorporate." *Gardner v. Heartland Indus. Partners*, 715 F.3d 609, 613 (6th Cir. 2013) (citation modified). If an ostensibly state law claim falls within the scope of § 1132(a)(1)(B), that is, if it is in actuality a civil action to recover benefits, enforce rights, or clarify rights under an ERISA plan, the claim will be deemed a federal claim arising under ERISA and preempted thereby. *Id.* Section 1132(a)(1)(B) covers and preempts a state law claim if two distinct requirements are met. First, the claim must be rooted in "the denial of benefits to which [the plaintiff] is entitled 'only because of the terms of an ERISA-regulated employee benefits plan.'" *Id.* (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). Second, the claim must stem from a violation of a legal duty which is not "independent of ERISA or the plan terms." *Davila*, 542 U.S. at 210.

Here, Plaintiff's promissory estoppel claim does not fall within the scope of § 1132(a)(1)(B). In *Gardner*, the Sixth Circuit expressly relied on the Second Circuit's application of § 1132(a)(1)(B) in *Stevenson v. Bank of New York Co.*, 609 F.3d 56 (2d Cir. 2010). *See Gardner*, 715 F.3d at 614–15. In *Stevenson*, the plaintiff alleged his employer, a bank, promised he could maintain his benefits under an ERISA-regulated plan if he accepted a transfer to another branch. 609 F.3d at 58–60. Plaintiff's employer allegedly reneged on that promise and then unlawfully terminated his employment from the transferee location. *Id.* at 58. Importantly, this promise ran contrary to the terms of the plan, which would not provide continued benefits coverage for employees transferred in circumstances such as the plaintiff's. *Id.* at 60–61; *Gardner*, 715 F.3d at 614. The Second Circuit held the plaintiff's state law promissory estoppel claim was not preempted, as it did not derive from the rights established under any ERISA-regulated plan. *Stevenson*, 609 F.3d at 60–61. Rather, the promissory estoppel claim derived "from a separate promise that references various benefit plans, none of which directly applie[d] to [the plaintiff] by its terms." *Id.*

And the same is true here. Plaintiff's promissory estoppel claim does not stem from the alleged breach of a promise contained within or otherwise relying on the terms of her benefits Plan. Rather, as in *Stevenson* and *Gardner*, the claim alleges Defendants violated a duty which independently arises under state tort law and is wholly untethered from the terms of her ERISA-regulated plan. *See Gardner*, 715 F.3d at 614 (explaining a similar tort claim is not preempted where a defendant's duty "is not derived from, or conditioned upon, the terms of the" plan). Specifically, Plaintiff does not allege Defendants promised to comply with the terms of the Plan in continuing her benefits even if she worked under 30 hours a week. Nor does Plaintiff claim Defendants violated the terms of the Plan by terminating her benefits after she began working

fewer than 30 hours a week. The alleged promise to maintain Plaintiff's benefits *despite* any contrary Plan terms, which Plaintiff alleges she reasonably relied on, *see* Doc. 15, at 18–19, is the source of the duty Defendants are alleged to have violated. *See Shampton v. Springboro*, 786 N.E.2d 883, 887 (Ohio 2003) (explaining a defendant may be liable under the doctrine of promissory estoppel where the plaintiff "relied on conduct of [the defendant] in such a manner as to change his position for the worse" and where such reliance was reasonable). Thus, Plaintiff's promissory estoppel claim is "based upon a duty that is independent of ERISA and the plan terms" and not preempted under § 1132(a)(1)(B). *Gardner*, 715 F.3d at 614 (citation modified).

Turning to ERISA's express preemption provision, "ERISA preemptions 'any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) (quoting 29 U.S.C. § 1144(a) (emphasis added)). This undoubtedly broad preemption provision, "conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990), covers all state statutory laws and causes of action which "(1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms;' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Penny*, 399 F.3d at 698 (quoting *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)).

Defendants do not specify how Plaintiff's promissory estoppel claim fits within this express preemption framework. Instead, Defendants offer a cursory citation to the Sixth Circuit's unpublished decision in *Simon v. Belwith International, Inc.*, which maintains state law claims may be "preempted by ERISA's statutory scheme even if the state law was not designed to affect employee benefit plans." 3 F. App'x 363, 365 (6th Cir. 2001). According to Defendants, this

precedent conclusively brings Plaintiff's promissory estoppel claim "within the scope of ERISA preemption." (Doc. 16, at 10); *accord* Doc. 23, at 6 (arguing Plaintiff's promissory estoppel claim is preempted because "the underlying issue concerns entitlement to benefits under an ERISA plan"). Plaintiff argues her promissory estoppel claim does not fall within *Penny*'s three categories because it does not seek to impact the administration or structure of her Plan, does not seek to enforce or modify the terms of the Plan, and would in no way regulate the Plan's operation. *See* Doc. 20, at 16. In part because of the lack of substantive argument offered by Defendants on this point, the Court agrees with Plaintiff.

While "state law promissory estoppel claims are generally preempted by ERISA," *Select Specialty Hospital-Memphis, Inc. v. Trs. of Langston Cos.*, 2020 WL 4275264, at *19 (W.D. Tenn.) (collecting cases), this "general" rule is primarily rooted in avoiding a remedial overlap between ERISA and state law causes of action. *See Aldridge v. Regions Bank*, 144 F.4th 828, 839 (6th Cir. 2025) ("Of most relevance, the Court has held that plan participants may not seek benefits under an ERISA-covered plan."). Specifically, a plan participant's state law claim will be preempted under the "alternative enforcement mechanism" prong outlined in *Penny* where it seeks "the benefits allegedly due to them under their ERISA-covered Plans." *Id.* at 841. Here, however, as outlined above, Plaintiff's promissory estoppel claim does not seek to recover under the terms of her Plan. Instead, it relies on Harmon's oral promise to continue her benefits *despite* any plan terms to the contrary. That is, her right to relief under a successful promissory estoppel claim rooted in Harmon's promise is entirely independent of the terms of the Plan, and the ultimate relief to which she is entitled may even run contrary to the terms of the Plan. While Plaintiff did request a "reinstatement of benefits" under the Plan, this request is made only in connection with her ERISA retaliation claim. *See* Doc. 15, at 14. With respect to her promissory estoppel claim,

Plaintiff seeks to recover medical expenses and "such other relief that is fair, equitable, or just" from Defendants directly, not her benefits under the Plan as such. *Id.* at 18–19. Therefore, Plaintiff's promissory estoppel claim does not serve as an "alternative enforcement mechanism" to recover "benefits allegedly due" to her under her Plan. *Aldridge*, 114 F.4th at 839, 841.[6] Nor do Defendants explain how this claim would mandate certain employee benefit structures and their administration or otherwise function as a regulation of an ERISA plan itself. For that reason, the Court finds Plaintiff's promissory estoppel claim is not expressly preempted under § 1144.

*Merits*

Next, Defendants claim Plaintiff's promissory estoppel claim fails on the merits because of her omission of an allegation "that plan documents were ambiguous." (Doc. 16, at 10). Citing both *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 2006) and *Moore*, 458 F.3d at 449 (Oliver, J., concurring), Defendants concluded "[a]llegations concerning ambiguity are necessary" and therefore "Plaintiff's promissory estoppel claim is deficient as a matter of law." (Doc. 16, at 10). While Plaintiff did not directly respond to this argument in her opposition briefing, the Court finds she did not manifest an intent to "abandon" her promissory estoppel claim. *See Travelers Prop. Cas. Co. v. Dayton Freight Lines, Inc.*, 2023 WL 2500174, at *2 (N.D. Ohio) ("It is well settled that a plaintiff abandons a claim when it fails to oppose a motion to dismiss that claim."). Plaintiff offered a substantive response to Defendants' argument that her promissory estoppel claim is preempted under ERISA. *See* Doc. 20, at 16–17. Accordingly, the Court determines the

6. In addition, Plaintiff's promissory estoppel claim would not "bind [her] employer or plan administrator[] to particular choices," *Penny*, 399 F.3d at 698 (citation modified), made "pursuant to their authority under the plan," *Select Specialty*, 2020 WL 4275624, at *20, as Plaintiff does not allege any individual acted pursuant to their administrative authority under the Plan when promising her benefits would not be taken away.

burden remains with Defendants to demonstrate why they are entitled to dismissal of Plaintiff's promissory estoppel claim.

Initially, it is unclear what persuasive effect *Sprague* has on the present suit, as *Sprague* opined on the separate but distinct doctrine of equitable estoppel as applied to federal law claims arising directly under ERISA. *See Sprague*, 133 F.3d at 403 ("We have held that equitable estoppel may be a viable theory in ERISA cases."). Accordingly, the Sixth Circuit surveyed decisions of multiple federal Courts of Appeals in concluding "estoppel can only be invoked in the context of ambiguous plan provisions." *Id.* at 404 (first citing *Fink v. Union Central Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996); and then citing *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 458 n.12 (11th Cir. 1996)). Here, however, Plaintiff's promissory estoppel claim arises under Ohio law, and the "[p]rinciples of estoppel," *id.* at 404, either equitable or promissory, governing such a claim arise solely under Ohio law. *See, e.g.*, *Walburn v. Lockheed Martin Util. Servs., Inc.*, 443 F. App'x 43, 47 (6th Cir. 2011) (affirming the conclusion "that state law should govern the application of equitable estoppel" to an Ohio law tort claim). Thus, there is room for divergence between the pleading requirements for an Ohio law promissory estoppel claim and the federal elements of an equitable estoppel argument outlined in *Sprague*.

Under Ohio law, a plaintiff bringing a promissory estoppel claim must plausibly allege the defendant (1) made "a clear and unambiguous promise;" (2) "upon which it would be reasonable and foreseeable" for the plaintiff to rely; (3) "actual reliance on the promise;" and (4) injury to the plaintiff "as a result of the reliance." *A N Bros. v. Total Quality Logistics, LLC*, 59 N.E.3d 758, 768–69 (Ohio Ct. App. 2016) (quoting *Ringhand v. Chaney*, 2014 WL 4180301, at *3 (Ohio Ct. App.)). As a general rule, "a cause of action for promissory estoppel is barred" where the relevant written instrument "contains no ambiguities." *Highway Equip. Co. v. Caterpillar, Inc.*, 707 F. Supp

954, 959 (S.D. Ohio 1989). This ambiguity requirement is best understood as operationalizing the reasonable reliance element of a promissory estoppel claim, as only if "the Court determines that the [instrument] is ambiguous" might the plaintiff "prevail on its promissory estoppel claim by establishing it reasonably relied on a definite promise by" the defendant. *Id.* In effect, it is almost always unreasonable for a party to an unambiguous written instrument to rely on a promise running contrary to the instrument's terms.

But the absence of an unambiguous written agreement is not an *element* of plaintiff's promissory estoppel claim. *See A N Bros.*, 59 N.E.3d at 768–69. And where, as here, Plaintiff alleges she had no access to the Plan's terms and was never made aware of the same, *see* Doc. 15, at 3–4, 9–10, it is plausible Plaintiff reasonably relied on Harmon's promise regarding her benefits even if such a promise ran contrary to the unambiguous terms of the Plan. The cases cited by Defendants lend some support for this conclusion, as much of the justification for finding the presence of an unambiguous plan term to vitiate a plaintiff's promissory estoppel claim results from the plaintiff "ha[ving] copies of" and being "intimately familiar with" the terms of the plan. *Moore*, 458 F.3d at 449 (Oliver, J., concurring) (citing *Sprague*, 113 F.3d at 404). Here, Plaintiff alleged she never received copies of the Plan, was never familiarized with its terms, and was ignorant of its contents. In such a scenario, the Court cannot determine, as a matter of law, it would be unreasonable for Plaintiff to rely on Harmon's oral promise, even if such promise ran contrary to the terms of the Plan. The Court therefore denies Defendants' Motion with respect to Plaintiff's promissory estoppel claim.

In sum, the Court dismisses Count 3 of Plaintiff's Complaint only with respect to Defendant Spartan, dismisses Counts 4 and 5 with respect to all moving Defendants, and dismisses

Count 6 with respect to Defendant Harmon. Plaintiff may proceed with all other claims raised in the Amended Complaint. *See* Doc. 15.

## **CONCLUSION**

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 16) be, and the same hereby is, GRANTED IN PART AND DENIED IN PART as set forth herein.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 1, 2026